c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JACINTA R. WALKER,              CIVIL ACTION NO. 1:18-CV-00703
Plaintiff

VERSUS                          JUDGE DRELL

CONCORDIA CAPITAL,              MAGISTRATE JUDGE PEREZ-MONTES
Defendant

---

## REPORT AND RECOMMENDATION

Before the Court are Rule 12(b)(6) Motions to Dismiss (Docs. 20, 33), filed by Defendant Concordia Capital Corp. ("Concordia").    Pro se Plaintiff Jacinta R. Walker ("Walker") filed an opposition. (Doc. 35).  Because Walker fails to state plausible claims for relief for racial and national origin discrimination; because her claims arising prior to May 1, 2016 are untimely; and because she failed to administratively exhaust claims for discrimination and harassment prior to October 28, 2016, discriminatory denial of leave and medical benefits, and retaliation, Concordia's Motions to Dismiss (Docs. 20, 33) should be GRANTED.

## I.    Background

On May 25, 2018, Walker filed a Complaint, *in forma pauperis*, for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").  (Doc. 1).  Walker named Concordia, doing business as Concordia Bank and Trust Company.  (Doc. 1). Walker filed her Complaint on the Court's standard civil rights complaint form.    (Doc. 1).    Walker indicated she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

1

(Doc. 1). Walker also indicated she received a "right-to-sue" letter, dated March 2018, respecting her charges. (Doc. 1). Rather than respond to the form questions, Walker simply referred to her attached documents: (1) the EEOC letter dated February 23, 2018 with its determination regarding the charge of discrimination; (2) the "right-to-sue" letter, dated February 26, 2018; and (3) a three-paragraph unsigned document.[1] (Doc. 1-2).

The EEOC determination letter and right-to-sue notice state the EEOC is unable to determine whether or not a violation of the law has occurred, and that the case should be closed. (Doc. 1-2). The attached three-paragraph document alleges discrimination by Concordia. (Doc. 1-2). Walker alleges Concordia has "never been compliant with laws since established in 1903." (Doc. 1-2). Walker alleges Concordia has a long history of discriminating against minorities through termination, hiring, and promoting employees. (Doc. 1-2). Walker further alleges Concordia discriminates in their lending practices toward minorities. (Doc. 1-2). Walker claims minorities are scarce among Concordia's over 100 employees. (Doc. 1-2). Walker further claims minority Concordia employees never receive equal and fair salary for education and work experience. (Doc. 1-2).

Walker alleges Concordia employees are never informed of all new job opportunities when available, and that outside Caucasian candidates are always sought and considered. (Doc. 1-2). Walker claims Concordia's minority employees

---

[1] The Court cannot determine whether the three-paragraph document attached to the Complaint was attached by Walker as allegations in the Complaint, or was a document previously included with her charge of discrimination. The Court presumes this document is intended to contain the allegations of her Complaint.

receive disparate treatment. (Doc. 1-2).  Walker further claims that, at Concordia, Caucasian employees are the majority in almost every department, and at all 8 branches.  (Doc. 1-2).

Walker states she disagrees with the EEOC's conclusion and that she was treated "with negligence including their investigation discrepancies." (Doc. 1-2). She claims she also filed a retaliation charge against Concordia. (Doc. 1-2).  Walker alleges she was harassed and intimidated by an EEOC employee to conduct a mediation against her will when she was recovering from medical surgery and off from work. (Doc. 1-2).  She claims the EEOC employee pre-concluded that Concordia would be found "not guilty of charge." (Doc. 1-2).  She claims a "[m]ediation division had [her] charge filed January 9, 2017 and prolonged the investigation process until May 8, 2017." (Doc. 1-2).  Walker claims that two investigators, Ms. Reyes and Ms. Mitchem, conducted the investigation on her charge.  (Doc. 1-2).  Walker asserts Ms. Mitchem never replied to her email.  (Doc. 1-2).   Walker claims evidence was concealed by EEOC representatives to protect and benefit Concordia.  (Doc. 1-2). Walker alleges the EEOC New Orleans Field Office claimed no knowledge of its employee's acts.  (Doc. 1-2).

Walker claims Concordia followed chain of command, and that the President/CEO refused to talk or resolve her problems.  (Doc. 1-2).  Walker claims she has past and present employee/customer statements about Concordia's discriminating actions, including her own experiences over the last 4 years. (Doc. 1-2).  Walker claims she has worked without pay and used her personal vehicle to

travel to another branch for work. (Doc. 1-2). She claims Concordia refused to reimburse her expenses. (Doc. 1-2). Walker asserts Concordia is biased and "does not comply with their own policies and procedures as minorities receive disparate treatment." (Doc. 1-2).

Concordia filed a Rule 12(b)(6) Motion to Dismiss (Doc. 20). Concordia seeks dismissal of Walker's claims on three bases: (1) that Walker's Title VII claims of discrimination and harassment based on race and/or national origin are so vague and conclusory that dismissal is appropriate; (2) that Walker's Title VII claims of discrimination and harassment based on race and/or national origin occurring prior to May 1, 2016 are time-barred; and (3) that Walker's Title VII claims of discrimination and harassment for any actions prior to October 28, 2016 and her claim for retaliation are premature as she failed to exhaust administrative remedies on these claims. (Doc. 20). Concordia attaches Walker's charge of discrimination (Doc. 20-2), in support of its motion.

Walker sought leave to amend her Complaint, which was granted without opposition on October 1, 2018. (Doc. 31). Walker's Amended Complaint asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* for unlawful discriminatory practice based on race and national origin. (Doc. 32). Walker asserts she is an African American who was hired and employed by Concordia as a bank teller for the drive-through window department. (Doc. 32). She was employed at the Vidalia, Louisiana branch location. (Doc. 32). Walker's Amended Complaint asserts three counts against Concordia: (1) discrimination

4

based on race and national origin in violation of 42 U.S.C. § 2000e-2(a)(1); (2) discrimination based on race and national origin in violation of 42 U.S.C. § 2000e-2(a)(2); and (3) retaliation in violation of 42 U.S.C. § 2000e-3(a). (Doc. 32).    (Doc. 32).

Walker asserts she submitted a charge of discrimination, EEOC Charge No. 461-2017-00369, to the EEOC against Concordia requesting an investigation based on race and national origin discrimination. (Doc. 32).  Walker claims conciliation failed and the EEOC sent a Notice of Right to Sue on February 23, 2018. (Doc. 32). Walker states she fulfilled all conditions precedent to suit and has exhausted her administrative remedies. (Doc. 32).

Walker has been employed with Concordia as a bank teller at the drive-through window since 2013.  (Doc. 32).  Upon her hire, she was provided with a Personnel Manual (revised 08/10/16) outlining Concordia's practices for EEOC Policy, Affirmative Action Plan, and Discrimination Policy. (Doc. 32).  Walker claims Concordia's personnel, supervisors, and upper management breached organizational policies by denying her equal employment opportunities, with fair advancement potential, free from discrimination based on race and national origin. (Doc. 32).  Walker asserts she has been subjected to racial and national origin discrimination during her tenure by various personnel, supervisors, and top management in violation of Title VII and Concordia's own policies. (Doc. 32). Walker states that over her several years of employment, she has been denied

promotions, advancements, and other benefits afforded to employees of a non-protected class in violation of Title VII. (Doc. 32).

Walker contends she "experienced on several occasions when employees of a protected class are not informed of certain job positions which become available, are paid less than minority employees, and are not equally compensated for their work experience, skills, and education." (Doc. 32). Walker claims a Caucasian with less education and experience was hired into an entry level bank teller position and compensated more than any non-Caucasian with similar experience in an entry-level position. (Doc. 32). Walker asserts this Caucasian was paid a higher entry bank teller salary than she was as a tenured bank teller with more experience and education. (Doc. 32).

Walker further claims she applied for an advancement position for which she was well qualified but was never afforded an interview. (Doc. 32). She contends the position was filled by a less-qualified Caucasian from outside the organization. (Doc. 32).

Walker alleges that, on another occasion, she received a disciplinary write-up for a cash drawer shortage on a day she was not scheduled for work. (Doc. 32). Walker claims Concordia's policy is to audit cash drawers only in the presence of an employee. (Doc. 32). On another occasion, she claims was not paid for her day's work when she refused to leave her branch location to work at another location. (Doc. 32). She also asserts she was the only teller asked to drive to the separate

6

location despite other non-protected class employees with less tenure being present and available to work at the satellite location. (Doc. 32).

Walker claims Concordia denied a request to leave her shift one hour early to attend her daughter's mandatory school orientation meeting. (Doc. 32). Yet, other similarly situated Caucasian employees were granted leave upon request with no adverse ramifications. (Doc. 32). Walker further claims that when she was involved in an auto accident and rendered disabled, her insurance benefits were cancelled without notification during her medical leave. (Doc. 32).

Walker contends she was treated differently than Caucasian employees in violation of Title VII. (Doc. 32). Walker alleges Concordia has engaged in continuing violations of discriminatory policies and practices, and those unconstitutional acts were parts of a continuing violation amounting to a single wrong within the limitations period. (Doc. 32).

Walker claims Concordia willfully engaged in illegal employment practices based on her race and national origin by compensating her less than other non-African American employees with similar education and experience. She further claims Concordia subjected her to unequal pay for the same duties worked as a drive-through bank teller than similarly situated Caucasian employees over the tenure of her employment due to her race and national origin. (Doc. 32). Walker alleges Concordia also failed to inform and promote her to advanced employment opportunities as non-African American employees with similar education and experience. (Doc. 32). Walker states Concordia retaliated against her for filing an

EEOC complaint. (Doc. 32). Walker further claims Concordia denied her medical leave, medical insurance, and continued employment for filing a claim against their illegal employment practices with the EEOC. (Doc. 32).

Walker asserts Concordia's conduct interfered with her health and work performance, creating an intimidating, hostile, and offensive working environment. (Doc. 32). Walker alleges she suffered loss of income, mental anguish, and humiliation. (Doc. 32). Walker seeks back pay, front pay, lost benefits, profits, and reinstatement to her former position; compensatory damages for emotional stress, mental duress, and loss of enjoyment of life; compensatory damages for acts of retaliation; and pre- and post-judgment interest. (Doc. 32).

Concordia responded on October 11, 2018 with a second Rule 12(b)(6) Motion to Dismiss (Doc. 33), on the same grounds as its other pending motion to dismiss. (Doc. 20). Concordia asserts that despite the opportunity to amend her Complaint, Walker's claims remain facially deficient. (Doc. 33). Concordia further asserts Walker fails to allege any facts to support a continuing violation theory. (Doc. 33). In support, Concordia attaches Walker's charge of discrimination (Doc. 33-2) and Walker's EEOC intake questionnaire, dated December 16, 2016 (Doc. 33-3).[2]

---

[2] When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id.; Norris v. Hearst Trust, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (citation omitted). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-499 (5th Cir. 2000). Here, Walker references the EEOC charge in her Complaint, and it is central to her claim. (Docs. 1, 32); see Emperador-Baker v. Jazz Casino Co., L.L.C., 16-CV—17058, 2017 WL 1346380

Walker opposes Concordia's motion to dismiss. (Doc. 35). Walker states the Court denied her request for appointed counsel giving her a disadvantage as to her representation in this matter. (Doc. 35). Walker argues she asserts her national origin as African American, and she does not understand Concordia's confusion. (Doc. 35). Walker contends her Complaint is sufficient on its face to put Concordia on fair and adequate notice of the nature of her claims of discrimination and unfair employment practices. (Doc. 35). Walker argues her claims for illegal employment practices beginning as early as 2014. (Doc. 35). Walker further asserts her claims prior to May 1, 2016 should be subject to equitable tolling under the "doctrine of continuing violations." (Doc. 35).

Concordia replied that Walker fails to provide any facts to support a "continuing violation" theory for claims prior to May 1, 2016. (Doc. 36). Concordia argues Walker also fails to provide an explanation for her failure to administratively exhaust claims of discrimination or harassment prior to October 28, 2016, retaliation, and denial of parental school leave and termination of medical benefits while on medical leave. (Doc. 36). Concordia further asserts Walker fails to

---

(E.D. La. Apr. 12, 2017) ("An EEOC charge that is referenced in a plaintiff's Title VII complaint is central to her claim and may be considered in deciding a Rule 12(b)(6) motion."). Additionally, "a sufficiently detailed intake questionnaire may be considered part of the EEOC charge, when it is verified and finalized via the formal charge." Howard v. Sam's East, Inc., 2017 WL 5935839, at *4 (W.D. La. Oct. 26, 2017) (citing Patton v. Jacobs Eng'g Grp., Inc., 874 F.3d 437 (5th Cir. 2017)). Walker's allegations were finalized in the formal charge referenced in her Complaint. (Docs. 1, 32, 33-2). Thus, the Court considers the EEOC charge and intake questionnaire without converting Concordia's Rule 12(b)(6) motion into a motion for summary judgment.

clarify her national origin claims, which are asserted synonymously with her racial origin. (Doc. 36).

II.    Law and Analysis

A.    Standards governing the Rule 12(b)(6) Motion to Dismiss.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true," to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility does not equate to possibility or probability; it lies somewhere in between.  Id.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  See Twombly, 550 U.S. at 556.  The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  Iqbal, 556 U.S. at 678.  A pleading comprised of labels and conclusions, a formulaic recitation

of the elements of a cause of action, or naked assertions devoid of further factual enhancement, will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief.  Id. at 679.

In determining whether a complaint states a plausible claim for relief, a court draws on its judicial experience and common sense.  Id.  In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  Id.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Id.

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." Hernandez v. Ikon Ofc. Solutions, Inc., 306 Fed.Appx. 180, 182 (5th Cir. 2009); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).  However, that general rule does not apply if an amendment would be futile. Townsend v. BAC Home Loans Serv'g, L.P., 461 Fed.App'x. 367, 372 (5th Cir. 2011); Jaso v. The Coca Cola Co., 435 Fed.App'x. 346, 351–52 (5th Cir. 2011). Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) (quotations and

citations omitted); <u>accord</u> <u>Fenghui Fan v. Brewer</u>, 377 Fed.App'x. 366, 367 (5th Cir. 2010). With respect to a statute of limitations defense, dismissal for failure to state a claim is proper when "it is evident from the pleadings that the action is barred and the pleadings fail to raise some basis for tolling." <u>Jones v. Alcoa, Inc.</u>, 339 F.3d 359, 366 (5th Cir. 2003); <u>accord</u> <u>Jaso</u>, 435 F. App'x at 351-52.

### B. <u>Walker's claims of discrimination and harassment based on race and/or national origin prior to May 1, 2016 are time-barred.</u>

Filing an administrative charge of discrimination with the EEOC is a prerequisite to a private civil action brought pursuant to the provisions of Title VII. <u>Dao v. Auchan Hypermarket</u>, 96 F.3d 787, 789 (5th Cir. 1996). Under Title VII, an employee is required to file a timely charge of discrimination with the EEOC ("EEOC charge") within 180 days of the alleged act of discrimination. <u>See</u> 42 U.S.C. § 2000e-5(e). Because Louisiana is a "deferral" state, Walker had 300 days from an alleged act of discrimination to file a charge with the EEOC. <u>See</u> 42 U.S.C. § 2000e-5(e)(1); <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002); <u>Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. & Mech. College</u>, 360 Fed. App'x. 562, 566 (5th Cir. 2010) (citing <u>Huckabay v. Moore</u>, 142 F.3d 233, 238 (5th Cir. 1998)).

Walker's Amended Complaint states she filed a charge for discrimination, EEOC Charge No. 461-2017-00369, against Concordia based on race and national origin. (Doc. 32). There is no indication when her charge was filed, and she did not attach a copy of the charge to her Complaint. (Doc. 32). However, Concordia attached to its Motion to Dismiss Walker's EEOC charge, 461-2017-00369, and intake questionnaire. (Docs. 33-2, 33-3). Walker filed an EEOC charge on February

25, 2017, for claims of racial and national origin discrimination on October 28, 2016. (Doc. 33-2).    Walker's EEOC charge characterizes the discrimination as a "continuing action."    (Doc. 33-2).    To the extent Walker asserts any acts of discrimination other than on the October 28, 2016 date, she needed to file within 300 days of the alleged acts.  Walker's EEOC charge was filed on February 25, 2017. (Doc. 33-2).  The date 300 days prior to her charge is May 1, 2016.  Thus, any act of discrimination occurring prior to May 1, 2016 is time-barred.  There is no evidence of any other EEOC charge having been filed.

While the timely filing of a charge with the appropriate local, state, or federal agency is not necessarily a jurisdictional prerequisite, it is a "precondition to filing suit in federal court."  Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002); see also Davis v. Fort Bend Cty., 893 F.3d 300, 304 (5th Cir. 2018), cert. granted, No. 18-525, 2019 WL 166880 (U.S. Jan. 11, 2019).   As a result, it is subject to doctrines such as equitable tolling. Manning v. Chevron Chem. Co., 332 F.3d 874, 880 (5th Cir. 2003).  Although there is no exhaustive list of circumstances that justify equitable tolling, the doctrine typically applies in three situations: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment; or (3) the EEOC's misleading the plaintiff about the nature of her rights. Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999).  "Discrete actions, even if 'serial,' 'are not entitled to the shelter of the continuing violation doctrine.'"  Doe v. United States, 853 F.3d 792, 802 (5th

Cir.2017), <u>as revised</u> (Apr. 12, 2017) (citing <u>Frank v. Xerox Corp.</u>, 347 F.3d 130, 136

(5th Cir. 2003)).  Particularly,

> The Fifth Circuit has repeatedly held that "the continuing violation
> doctrine does not automatically attach in hostile work environment
> cases, and *the burden remains on the employee* to demonstrate an
> organized scheme led to and included the present violation." *Celestine
> v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir. 2001) *350
> (citing *Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir. 1998); *Berry v.
> Bd. of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983))
> (emphases added); *see also Stewart v. Miss. Transp. Com'n,* 586 F.3d
> 321, 328 (5th Cir. 2009) ("This continuing violation doctrine is limited
> in three ways. First, *the plaintiff must demonstrate* that the separate
> acts are related, or else there is no single violation that encompasses
> the earlier acts." (citation and internal quotation marks omitted)
> (emphases added)).

<u>Tillman v. S. Wood Preserving of Hattiesburg, Inc.</u>, 377 Fed.Appx. 346, 349–50 (5th

Cir. 2010).

Walker argues all claims prior to May 1, 2016 should be equitably tolled.

(Doc. 35).  Walker further argues she seeks relief for "illegal employment practices

beginning as early as 2014."  (Doc. 35).  Walker claims she was unsure whether the

discriminatory conduct was a systemic pattern and practice by her new employer.

(Doc. 35).  Walker states the conduct did not occur on a daily or weekly basis but

was unpredictable.  (Doc. 35).  Walker claims only a reasonable period of discovery

could lead to information showing Concordia's illegal conduct.  (Doc. 35).  Concordia

argues that Walker fails to plead conduct within the 300-day limit or connected to

earlier conduct.  (Doc. 33-1).  Concordia asserts "discrete acts" of discrimination are

excluded from the continuing violation doctrine.  (Doc. 33-1).

Walker's original Complaint does not allege on what date the alleged discriminatory acts took place. (Doc. 1). The original Complaint alludes to her own experiences of discrimination over the past four years. (Doc. 1-2). Yet, she does not provide any specific dates of discrimination. (Doc. 1). Walker checked the "continuing action" box on her EEOC charge. (Doc. 33-2). However, she noted the discrimination began at the earliest on October 28, 2016 and ended at the latest on that same date. (Doc. 33-2). Walker began employment with Concordia in October 2013. (Doc. 33-2). She claims that on October 28, 2016, she discovered another teller hired after her was being compensated more and being considered for a promotion. (Doc. 33-2). She alleges white employees are favored and considered, opportunities and compensation are unequal, minorities are underrepresented and underutilized, harassments are concealed, and minorities receive disparate treatment. (Doc. 33-2). Walker's Amended Complaint asserts she has been employed as a bank teller since 2013. (Doc. 32). Walker claims that during her tenure, she has been subjected to racial and national origin discrimination. (Doc. 32). She makes allegations of discrimination occurring on several "occasions" but does not provide dates. (Doc. 32). Otherwise, there are other no references to any dates of discrimination or harassment concerning allegations against Concordia. (Docs. 1, 32).

Walker's allegations consist of discrete acts which are not subject to the "continuing violations" doctrine. Moreover, a review of the record reveals none of the circumstances in which equitable tolling would apply. Walker has failed to establish

facts sufficient to demonstrate an "organized scheme" or that the "separate acts are related." Tillman, 377 Fed.Appx. at 349-50. Thus, the Court finds the limitations period in this case is not subject to equitable tolling.

### C. Walker failed to exhaust administrative remedies for her Title VII claims of discrimination and harassment occurring prior to October 28, 2016, denial of leave or benefits, and retaliation.

Concordia seeks to dismiss Walker's allegations of several discrete acts of alleged discrimination and harassment which have no corresponding dates, discriminatory denial of her request for leave and cancellation of her medical insurance, and retaliation. (Doc. 33-1).

Again, Walker must exhaust her administrative remedies by filing an EEOC charge before bringing suit under Title VII. See Price v. Choctaw Glove & Safety Co., Inc., 459 F.3d 595, 598 (5th Cir. 2006); see also Taylor, 296 F.3d at 378-79. A claim may then be brought in a lawsuit if it is contained in the EEOC complaint, construed broadly, or would be part of "the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination," which is "a fact-intensive analysis" of the substance of the complaint. McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008). In other words, a plaintiff is generally precluded from bringing claims outside the scope of the EEOC charge, and their complaint is limited to the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." Mack v. John L. Wortham & Son, L.P., 541 Fed.Appx. 348, 358 (5th Cir. 2013); see also Pacheco v.

Mineta, 448 F.3d 783, 789 (5th Cir. 2006) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)).

### 1. Discrimination and harassment prior to October 28, 2016

As the Supreme Court explained in Morgan, the 300-day clock starts running for charges of discrete discriminatory acts, such as the failure to hire, promote, or train, on the day that the act occurred, and if an employee does not timely file his complaint, that act is no longer actionable under Title VII. 531 U.S. at 110-111. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Morgan, 536 U.S. at 114. Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Morgan, 536 U.S. at 114; see also Stewart v. Miss. Transp. Com'n, 586 F.3d 321, 328 (5th Cir. 2009).

Each discrete act is separately actionable, and is time barred if the EEOC charge was filed 300 days beyond the occurrence of the act unless the claims are subject to the equitable doctrines of waiver, estoppel, or tolling. See, e.g., Pegram v. Honeywell, Inc., 361 F.3d 272, 280 (5th Cir. 2004) (employer's alleged failure to train and refused admission to MBA program were discrete events). Further, to constitute a hostile work environment claim, the "unlawful employment practice must have occurred 'over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" Mack, 541 Fed.Appx. at 356–57 (quoting Morgan, 536 U.S. at 115).

17

Here, Walker's EEOC charge did not contain any allegations of acts of discrimination or harassment prior to October 28, 2016. (Doc. 33-2). Walker stated she began employment in 2013. (Doc. 33-2). Walker's EEOC charge states that on October 28, 2016, she discovered another teller hired after her was being compensated more, was considered for, and received a promotion. (Doc. 33-2). Walker alleges in the particulars of the charge that "[w]hite employees are favored and considered . . . opportunities are unequal; compensation is unequal including bonuses, wage increase, mileage reimbursement, etc." (Doc. 33-2). Walker also states "[m]inorities are underrepresented and underutilized, harassment is concealed by disciplinary actions as minorities receive disparate treatment." (Doc. 33-2). No other allegations of discrimination or harassment were contained in the particulars of her charge and no dates were provided other than the October 28, 2016 date. (Doc. 33-2). Walker's EEOC intake questionnaire only mentions the October 28, 2016 act of discrimination for unequal compensation. (Doc. 33-3).

Walker's Amended Complaint contains several references to discrete acts of alleged discrimination without mention of any corresponding dates. (Doc. 32). Also, Walker's Amended Complaint does not provide any dates for the alleged discrete acts of discrimination and harassment. (Doc. 32). To the extent Walker alleges claims of discrimination or harassment prior to October 28, 2016, Walker's EEOC charge presented no facts which would include adverse actions before October 28, 2016. (Doc. 33-2). Such claims could not reasonably be expected to "grow out of [Walker's] charge of discrimination" based on the October 28, 2016 alleged act.

Mack, 541 Fed.Appx. at 358.  To the extent Walker asserts claims for discrimination or harassment prior to October 28, 2016, those claims should be dismissed for failure to exhaust.

       2.   **Denial of benefits**

In her Amended Complaint, Walker alleges termination of her health insurance and denial of a single request for leave. (Doc. 32).  Concordia seeks dismissal of Walker's allegations of discriminatory denial of leave or benefits, as they were not contained in her EEOC charge or intake questionnaire and would not "reasonably be expected to grow out of the charge of discrimination." (Doc. 33-1).

Nowhere in Walker's EEOC charge or intake questionnaire does she mention denial of leave requests or discriminatory cancellation of health insurance. (Docs. 33-2, 33-3).  Rather, Walker's EEOC charge asserts failure to promote and unequal compensation compared to that of Concordia's white employees. (Doc. 33-2).  An EEOC investigation into denial of leave benefits and cancellation of insurance would not "grow out of [Walker's] charge of discrimination." Mack, 541 Fed.Appx. at 358.  "Although '[v]erbal precision and finesse [in the charge] are not required,' a Title VII lawsuit can include only those allegations that are 'like or related to [those] allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" Davenport v. Edward D. Jones & Co., L.P., 891 F.3d 162, 167 (5th Cir. 2018) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)).

Here, Walker's claims of denial of leave benefits or discriminatory cancellation of health insurance are not "like or related to" the allegations in the

charge of failure to promote and discriminatory pay. Thus, Walker's claims of denial of leave benefits and cancellation of health insurance should be dismissed for failure to exhaust.

### 3. Retaliation

Concordia also seeks dismissal of Walker's retaliation claims as premature and procedurally deficient. (Doc. 33). Walker's Amended Complaint asserts for the first time that Concordia retaliated against her for filing an EEOC Complaint, in violation of 42 U.S.C. § 2000e-3(a). (Doc. 32). Walker alleges Concordia willfully retaliated against her by denying her medical leave, medical insurance, and continued employment for filing an EEOC charge. (Doc. 32). Walker did not check the box for "Retaliation" on her EEOC charge. (Doc. 33-2). Walker only checked the boxes for race discrimination and national origin discrimination. (Doc. 33-2). Nothing in Walker's EEOC charge, or the particulars of the charge, implicate a charge of retaliation. (Doc. 33-2). Walker also did not check the box for "Retaliation" on her intake questionnaire. (Doc. 33-3).

The Fifth Circuit has held that a plaintiff fails to exhaust his administrative remedies as to a particular claim if the plaintiff fails to check the appropriate box on his EEOC charge form. See Luna v. Lockheed Martin Corp., 54 Fed. Appx. 404 (5th Cir. 2002). An EEOC investigation into race and national origin discrimination allegations would not reasonably lead the EEOC to investigate a charge of retaliation. See Teffera v. North Texas Tollway Authority, 121 Fed.Appx. 18, 21 (5th Cir. 2004) (noting that where plaintiff did not check the retaliation box on his

EEOC charge, plaintiff did not exhaust his claim with the EEOC and therefore could not bring the claim in a civil action). Thus, Walker's retaliation claim must be dismissed for failure to exhaust her administrative remedies.

### D. Walker fails to state plausible claims for relief against Concordia for race and national origin discrimination and harassment.

Concordia seeks dismissal of Walker's Amended Complaint for failure to allege the prima facie elements for claims of race and national origin discrimination and harassment. (Doc. 33-1).

The Supreme Court has held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002); see also Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013) ("[A] plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim."). The Supreme Court explained that the McDonnell Douglas framework "is an evidentiary standard, not a pleading requirement." Swierkiewicz, 534 U.S. at 510; see also Nall v. BNSF Ry. Co., 17-20113, 2019 WL 638011, at *12 (5th Cir. Feb. 15, 2019) ("Although courts keep trying to trim back its invasion of those parts of employment law where it does not belong—pleading standards . . ., for example – its dominance continues.")[3]

---

[3] In applying this evidentiary standard, the Fifth Circuit has stated:

> Title VII race- and national-origin-based discrimination claims, such as those at issue *243 here, are evaluated under the *McDonnell Douglas v. Green* burden-shifting framework. 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, a plaintiff must establish that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3)

Accordingly, Walker's Complaint needs only to comply with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; Swierkiewicz, 423 U.S. at 515. Although Walker is not required to plead a prima face case to survive a Rule 12(b)(6) motion, she must allege facts sufficient to state all the elements of her Title VII claims. See Stone v. La. Dept. of Revenue, 590 Fed.Appx. 332, 340 (5th Cir. 2014) (affirming the dismissal of discrimination claims under Title VII because the plaintiff failed to allege an adverse employment action); Richard v. St. Tammany Par. Sheriff's Dep't, 2018 WL 2065594, at *7 (E.D. La. May 3, 2018) (holding a plaintiff pleaded a plausible retaliation claim when he alleged facts sufficient to state all the elements of his claim); see also Jenkins v. Louisiana Workforce Comm'n, 713 Fed.Appx. 242, 244 (5th Cir. 2017) (citing Chhim v. Univ. of Texas at Austin, 836 F.3d 467, 470 (5th Cir. 2016)) (affirming the dismissal of discrimination and retaliation claims under Title VII because the plaintiff failed to allege a policy of discrimination or that she was engaged in a protected activity).

---

suffered an adverse employment action, such as termination of her employment; and (4) was replaced with someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir.2007). If the plaintiff makes this prima facie showing, the burden shifts to her employer to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 557. If the employer articulates a legitimate reason for the adverse employment action, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory ... purpose." *Id.; see also Vaughn v. Woodforest Bank,* 665 F.3d 632, 636 (5th Cir.2011) (describing mixed-motive analysis).

Buisson v. Bd. of Sup'rs of Louisiana Cmty. & Tech. Coll. Sys., 592 Fed.Appx. 237, 242–43 (5th Cir. 2014).

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals' race, color, sex or national origin . . ." 42 U.S.C. § 2000e-2(a).  To establish a prima facie case of discrimination on the basis of race or national origin under Title VII, a plaintiff must show that she:  (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated employees outside of her class.  See Thompson v. City of Wacwell o, 764 F.3d 500, 507 (5th Cir. 2004).

Concordia asserts Walker's claims of racial discrimination could be broken down into essentially five claims:  (1) discriminatory pay; (2) discriminatory failure to promote; (3) discriminatory discipline; (4) discriminatory enforcement of leave policies; and (5) discriminatory cancellation of health benefits.  (Doc. 33-1). Concordia argues Walker's allegations consist mostly of vague, conclusory statements regarding Concordia's overall business practices and policies, devoid of references as to how her rights were violated. (Doc. 33-1). While inartfully pleaded, Walker appears to also allege race and national origin harassment.  (Doc. 32). Concordia also seeks to dismiss Walker's claims of race and national origin harassment as vague, ambiguous, and facially deficient. (Doc. 33-1).

As discussed herein, Walker failed to exhaust claims of discriminatory denial of leave benefits, cancellation of health benefits, and retaliation.  Additionally, the Court found Walker's claims prior to May 1, 2016 were untimely.  The Court sees no

need to address the merits of those claims. The Court now addresses Walker's remaining claims of failure to promote and discriminatory pay based on race and national origin. Also, to the extent Walker's Complaint could be construed to contain a cause of action for harassment or hostile work environment, although not expressly asserted, the Court will also address that claim.

### 1.    Failure to promote

"To establish a prima facie case in a failure to promote case, the employee must show '(1) that the employee is a member of the protected class; (2) that [s]he sought and was qualified for the position; (3) that [s]he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications.'" Stringer v. N. Bolivar Consol. Sch. Dist., 727 Fed.Appx. 793, 803 (5th Cir. 2018) (citing Davis v. Dall. Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004). "In the context of failure-to-promote claims, [the Fifth Circuit has] held that a plaintiff asserting such a claim must show that '[s]he applied for' the position sought. Thomas v. Tregre, 913 F.3d 458, 463–64 (5th Cir.2019), as revised (Jan. 25, 2019) (citing Jenkins v. La. Workforce Comm'n, 713 F. App'x 242, 244 (5th Cir. 2017) (per curiam) (quoting Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc., 482 F.3d 408, 412 (5th Cir. 2007)).

Here, Walker alleges discriminatory failure to promote because of her race and national origin. (Doc. 32). Walker sufficiently alleges she is a member of a protected class, African American. (Doc. 32).[4] She also alleges a Caucasian

---

[4]    Concordia asserts Walker's allegations are vague, inconsistent, and wholly inadequate to put them on notice of the specifics of her national origin claim. (Doc. 33-1).

employee with less education and experience was hired into an entry level bank teller position and compensated more than any non-Caucasian with similar experience. (Doc. 32). Walker claims this Caucasian was paid a higher entry level bank teller salary than Walker was being paid as a tenured bank teller with more experience and education. (Doc. 32). Walker claims she applied for an "advancement position for which she was well qualified and was never afforded an

---

Concordia claims Walker's Amended Complaint fails to provide any facts supporting a claim that Concordia discriminated against her based on the fact that her ancestors came from any of these continents or countries. (Doc. 33-1). Concordia cites to the Supreme Court decision in Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973) and 29 C.F.R. § 1606.1.

In Espinoza, the Supreme Court noted that "[t]he term 'national origin' on its face refers to the country where a person was born, or more broadly, the country from which his or her ancestors came." Id. National origin discrimination is defined "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." See 29 C.F.R. § 1606.1.

This Court has previously noted that the legislative history of Title VII enunciates that a person's national origin has nothing to do with color, religion, or race. Roach v. Dresser Indus. Valve and Instrument Division, 494 F.Supp. 215, 216 (W.D. La. 1980) (recognizing discrimination against "Cajuns" as national origin discrimination under Title VII although the colony of Acadia no longer exists). Here, Walker alleges race and national origin discrimination on the basis that she is an "African American." (Doc. 32). Although, Walker's Amended Complaint contains no allegations specifically referencing a country of origin or of her ancestors, Walker argues her national origin is African American. (Doc. 35). Walker's Amended Complaint alleges she is African American. (Doc. 32). She alleges she suffered race and national origin discrimination. (Doc. 32). Her EEOC charge claims she was discriminated against because of her race, which she listed as "Black; Native Hawaiian/Pacific Islander; Indian or Alaska Native" and because of her national origin, which she described as "Other." (Doc. 33-2). Walker's EEOC intake questionnaire indicated her race is American Indian or Alaskan Native, Black or African American, Native Hawaiian or Other Pacific Islander. (Doc. 33-3). She indicated her national origin is "Africa, India, Ireland, etc." (Doc. 33-3). Walker also indicated the basis of her claim for employment discrimination is race and national origin, and "stereotype as African American (minority)". (Doc. 33-3). Moreover, she alleges she was treated less favorably than similarly situated non-African American employees. (Doc. 32). Walker's reference to herself as African American for claims of race and national origin discrimination is sufficient to put Concordia on notice of her national origin discrimination claim.

interview, yet the position was filled by a less qualified Caucasian from outside the organization." (Doc. 32).

However, Walker fails to allege any additional facts regarding the promotion or the position of the alleged promotion. (Doc. 32); see e.g. Peters v. Fed. Exp. Corp., 2010 WL 2195466, at *2 (W.D. La. May 27, 2010) (dismissing complaint in putative Title VII class action where plaintiffs made only conclusory allegations that they were denied promotions and received unequal compensation without providing the names of employees who received promotions or the managers who allegedly discriminated, the dates on which alleged acts of discrimination took place, or any explanation of the allege wage disparities). Thus, Walker fails to state a plausible claim for relief for discriminatory failure to promote.

### 2.    Pay Discrimination

In order to make out a prima facie case of pay discrimination under Title VII, a plaintiff must show (1) "that [s]he was a member of a protected class"; (2) "that [s]he was paid less than a non-member"; and (3) "that [her] circumstances are 'nearly identical' to those of" the better-paid non-member." Mengistu v. Mississippi Valley State Univ., 716 Fed.Appx. 331, 333–34 (5th Cir. 2018) (citing Taylor v. United Parcel Serv., Inc., 554 F.3d 510, 522–23 (5th Cir. 2008)).

Concordia argues Walker failed to allege any relevant facts – such as names, dates, or descriptions of duties – to aid the determination of whether Walker and the unnamed white employee performed the same work under nearly identical

working conditions.  (Doc. 33-1).  Concordia also asserts Walker failed to allege any information as to pay. (Doc. 33-1).

As previously discussed, Walker sufficiently alleges she was a member of a protected class.  The Court also previously noted she alleges a Caucasian employee with less education and experience was hired into an entry level bank teller position and compensated more than any non-Caucasian with similar experience.  (Doc. 32). Walker claims this Caucasian was paid a higher entry level bank teller salary than Walker was being paid as a tenured bank teller with more experience and education.  (Doc. 32).  However, Walker fails to allege any other specific facts concerning her allegations of discriminatory pay. (Doc. 32).  Walker's conclusory allegations and bare recitals of the elements of a claim are not enough to "nudge[ ] [her] claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

### 3.  <u>Harassment</u>

Walker did not allege harassment or hostile work environment as a cause of action in her Amended Complaint. (Doc. 32). Yet, she alleges several times in her Amended Complaint that Concordia has an "intimidating, hostile, and offensive working environment" and their conduct is "severe and pervasive."  (Doc. 32).  Out of an abundance of caution, Concordia seeks to dismiss Walker's claims of harassment or hostile work environment, to the extent they were asserted. (Doc. 33-1).

Where the plaintiff's complaint fails to allege facts that demonstrate he was repeatedly subjected to harassment that was linked to race, the Fifth Circuit has upheld dismissal for failure to state a claim for relief for hostile work environment. Whitlock v. Lazer Spot, Inc., 657 Fed.Appx. 284, 287 (5th Cir. 2016). The Fifth Circuit noted,

> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000)). Further, to constitute a hostile work environment claim, the "unlawful employment practice must have occurred 'over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.' " *Mack v. John L. Wortham & Son, L.P.,* 541 Fed.Appx. 348, 356–57 (5th Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

Id. In Whitlock, the complaint alleged,

> [The plaintiff] was punished for infractions that white employees were not punished for. The discrimination within the workplace create[d] a hostile work environment that was difficult for [him] to endure. The defendant's actions caused stress related problems. A white employee was allowed to ride around in a pickup without doing his job duties but given credit for the work done by African-American employees.

Id.

Similarly, Walker fails to allege facts sufficient to state a claim for relief for hostile work environment. She alleges she has "consistently been subjected to discrimination based on her race and national origin." (Doc. 32). Also, in counts one and two of her Amended Complaint, under allegations of unequal pay and compensation and failure to promote, she asserts that such actions "occurred over

the tenure of her employment" and "create an intimidating, hostile, and offensive working environment."  (Doc. 32). Otherwise, Walker's Amended Complaint fails to contain any additional facts other than conclusory allegations to establish she was repeatedly subject to "harassment" on the basis of her race or national origin.

## III.  <u>Conclusion</u>

Because Walker fails to state plausible claims for relief for racial and national origin discrimination; because her claims arising prior to May 1, 2016 are untimely; and because she failed to administratively exhaust claims for discrimination and harassment prior to October 28, 2016, discriminatory denial of leave and medical benefits, and retaliation,

IT IS RECOMMENDED that Concordia's Rule 12(b)(6) Motions to Dismiss (Docs. 20, 33) be GRANTED.  Walker's claims should be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __27th__ day of February, 2019.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge